D. Maimon Kirschenbaum
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, New York 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**MENUCHA ROCHEL TENENBAUM,**

    **Plaintiff,**

    v.

**HERITAGE EQUITY HOLDINGS, LLC, THE WILLIAMSBURG HOTEL BK, LLC and MICHAEL LICHTENSTEIN,**

    **Defendants.**
-----------------------------------------------------------x

Case No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff Menucha Rochel ("Rachel") Tenenbaum alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"). This Court has supplemental jurisdiction over the New York law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

1

## PARTIES

3. Defendant The Williamsburg Hotel BK, LLC (the "Hotel" or "Defendant Hotel") is a business incorporated in New York and with a place of business at 96 Wythe Avenue, Brooklyn, New York. The Hotel is a luxury boutique hotel in the heart of Williamsburg, Brooklyn.

4. Defendant Heritage Equity Holdings, LLC ("Defendant Heritage") is a real estate development firm owned and operated by Defendant Lichtenstein and Toby Moskovitz. Defendant Heritage owns and operates The Williamsburg Hotel.

5. Defendant Michael Lichtenstein ("Defendant Lichtenstein") is the President of Heritage Equity Partners, which he owns together with Toby Moskovitz, the Chief Executive Officer of Defendant Heritage. Defendant Lichtenstein manages the day-to-day business of the Hotel.

6. Plaintiff Menucha Rochel "Rachel" Tenenbaum ("Plaintiff" or "Plaintiff Tenenbaum") was hired by Defendant Lichtenstein on April 12, 2021, as an interior designer at The Williamsburg Hotel. She reported directly to Defendant Lichtenstein throughout her employment.

## FACTS

7. On April 8, 2021, Defendant Lichtenstein contacted Plaintiff Tenenbaum, seeking to hire her for "ongoing interior design work" at The Williamsburg Hotel. After interviewing with Defendant Lichtenstein, she was offered a job as an Interior Designer for the Hotel. Plaintiff Tenenbaum began working at the Hotel on or about April 12, 2021.

8. Plaintiff's responsibilities included maintaining and revamping the modern and trendy appearance of the hotel rooms and rooftop pool and bar area, and researching and selecting furniture and design elements to be placed throughout the Hotel.

9. Plaintiff began by training into her position with the outgoing interior designer. Then, on or about April 15, 2021, Defendant Lichtenstein gave Plaintiff a one-on-one tour of the Hotel.

10. Defendant Lichtenstein, under the guise of giving Plaintiff a sense of the Hotel's overall style, escorted her into various empty hotel rooms for hours. Plaintiff took pictures of the rooms and took notes, while Defendant Lichtenstein watched her and commented on how pretty she looked.

11. Defendant Lichtenstein, who is in his 50s and is the President of a multi-million dollar development firm, spent hours of his time that day walking Plaintiff, who was 23 years old at the time, throughout the Hotel.

12. Plaintiff felt extremely uncomfortable with Defendant Lichtenstein's comments and inordinate personal attention, but she did not want to make waves by speaking up so soon after getting hired.

13. In one room, Defendant Lichtenstein pointed out the transparent glass wall that separated the shower from the bedroom area. The bottom half of the glass wall was frosted to conceal anyone who would be bathing. The top half of the glass wall was transparent. Defendant Lichtenstein pointed out this design choice to Plaintiff Tenenbaum, saying, "You know why I did that? To show a woman's breasts, so it's still sexy."

14. Defendant Lichtenstein then escorted Plaintiff into his personal suite at the Hotel, and told her to sit on the sofa. While he continued speaking with Plaintiff, Defendant Lichtenstein put a suitcase on the sofa near Plaintiff and proceeded to fold his clothing and underclothes in front of her.

15. Despite this highly uncomfortable start to her employment, Plaintiff was eager to make the best of this career opportunity and work on the Hotel's interior design needs. Thus, she decided not to complain about Defendant Lichtenstein's comments or behavior at that time.

16. However, Defendant Lichtenstein continued to ply Plaintiff with compliments about her appearance in a flirtatious manner whenever they were together.

17. Defendant Lichtenstein was Plaintiff's direct supervisor, and thus interacted with her nearly every day that he was in town, usually Wednesday through Friday.

18. On one occasion, Plaintiff was working on the Hotel's rooftop lounge area moving tables. Despite Defendant Lichtenstein's high-level role in the development firm, he chose to do this physical work with Plaintiff. While working, Defendant Lichtenstein commented that moving the tables was "a good workout, not that you need it. You're beautiful." This comment was typical of the inappropriate, sexual, and unwanted attention Defendant Lichtenstein directed toward Plaintiff.

19. On another occasion, Plaintiff was working on the rooftop in the rain. Defendant Lichtenstein, the President of a highly successful and busy development firm, chose to join Plaintiff outside, stood close to her body and held an umbrella for her while she worked. Plaintiff did not request his assistance and felt highly uncomfortable with this inordinate attention and physical proximity.

20. On Tuesday May 11, 2021, in the afternoon, Plaintiff Tenenbaum asked Defendant Lichtenstein for the upcoming Thursday off from work to celebrate her 24th birthday. Defendant Lichtenstein granted Plaintiff the day off.

21. Later that day, at approximately 5:30 p.m., Defendant Lichtenstein told Plaintiff to meet him on the Hotel rooftop to discuss a new project he had for her. Plaintiff met Defendant Lichtenstein and walked with him to the rooftop area.

22. As they walked up to the rooftop area, Defendant Lichtenstein commented that Plaintiff was "the most beautiful 24-year-old" and that he should give her "24 kisses for your 24th birthday."

23. Then Defendant Lichtenstein and Plaintiff arrived at the rooftop pool and bar area of the Hotel. After a brief conversation, it became windy and cold. Defendant Lichtenstein suggested that they go back inside the Hotel. As he walked next to Plaintiff back into the Hotel, he put his arm around Plaintiff's shoulders.

24. Plaintiff, feeling extremely intimidated and uncomfortable by the unwanted touching, shrank away from him but could not pull away. Defendant Lichtenstein held her tight against his body as they walked back into the Hotel.

25. He then walked Plaintiff to his personal suite, closed the door, and again told her to sit on the sofa while he spoke about work assignments, peppered with flirtatious comments.

26. Defendant Lichtenstein, perhaps recognizing Plaintiff's horror at his comments and behavior, disingenuously said, "If there's anything that makes you uncomfortable, let me know." He did not, however, end the conversation or move to a more appropriate location for business conversations.

27. Defendant Lichtenstein then told Plaintiff about a recent meeting he'd had with a billionaire. He said the billionaire walked into the meeting with a couple of models and now Defendant Lichtenstein wanted to "one-up" him. Plaintiff Tenenbaum, anticipating another inappropriate comment, tried to make small talk and said he should also show up to a meeting with

5

models. Defendant Lichtenstein then looked directly at Plaintiff and said flirtatiously, "I'm standing next to a model now."

28. Plaintiff attempted to direct the conversation back to work-related topics, however, while she was speaking, she noticed Defendant Lichtenstein staring at her in a peculiar way. When she inquired whether he was okay, Defendant Lichtenstein responded in a coy manner, "Sorry, you're distracting me."

29. When Defendant Lichtenstein finished speaking to Plaintiff, the two got up to leave Defendant Lichtenstein's hotel room. Defendant Lichtenstein then reminded Plaintiff that he still needed to give her the "promised" 24 kisses for her birthday, and he proceeded to kiss her 24 times on her cheek. Well-aware that she was alone in a locked room with a man twice her age, Plaintiff froze and hoped he would not further assault her. Not knowing what his ultimate intentions were, and in complete shock, Plaintiff prayed he would stop.

30. After this assault on Plaintiff, Defendant Lichtenstein told her that he wanted to show her something else in the rooftop area. He then led her to the elevator. Alone in the elevator with Defendant Lichtenstein, Plaintiff attempted to divert the conversation away from anything sexual. However, Defendant Lichtenstein smiled and stared at Plaintiff in a flirtatious manner. He then said, "That kissing thing was really cute."

31. As the two approached the rooftop area again, Defendant Lichtenstein offered to set up free drinks for Plaintiff and her girlfriends at the Hotel in celebration of her birthday. Plaintiff declined the offer. Defendant Lichtenstein then leaned in for another kiss on Plaintiff's cheek.

32. Defendant Lichtenstein then personally escorted Plaintiff all the way to the Hotel garage where her car was parked.

33. Plaintiff was terrified by Defendant Lichtenstein's behavior and wanted to remain home from work the following day. However, she had scheduled to work off-site that day, assisting another employee in New Jersey, so she decided she could work as scheduled, away from the Hotel. That afternoon, Miriam Gross, Defendant Heritage's Director of Operations, ordered Plaintiff to come to the administrative office of Defendant Heritage, where Defendant Lichtenstein often works, to drop off the corporate credit card.

34. Plaintiff entered the office and attempted to quickly leave, but Defendant Lichtenstein immediately called her into his personal office. He kept her in his office for nearly 30 minutes. At one point, Defendant Lichtenstein, referring to Plaintiff's day off the following day, said, "I don't know if everyone will miss you, but I will miss you."

35. While away from work, Plaintiff felt the impact of the traumatizing evening the night before. She feared Defendant Lichtenstein's brazen behavior would escalate and that he may sexually assault her again. On Friday, May 14, 2021, Plaintiff decided she could not go in to work and informed Defendant Lichtenstein.

36. In the evening of May 18, 2021, Plaintiff Tenenbaum emailed a complaint to the Hotel's human resources department ("HR"). Plaintiff described not only the events that took place on May 11, 2021, but also previous unwanted sexual attention. She stated that she no-longer felt comfortable or safe working with Defendant Lichtenstein, and certainly not on a one-on-one basis.

37. On May 19, 2021, Ms. Gross called Plaintiff regarding her complaint. Plaintiff once again reported the unwanted sexual contact. Ms. Gross assured Plaintiff that they did not want to lose her and wanted her to remain on the team. Plaintiff stated that she would not return to work unless Defendant Hotel and Defendant Heritage could ensure that she would no longer report directly to Defendant Lichtenstein, Plaintiff would only interact in person with Defendant

Lichtenstein in group settings, and Plaintiff's primary function would remain interior design and not administrative work as Ms. Gross had suggested as an option during the conversation. Plaintiff further requested to meet with Ms. Gross again in two weeks to assess the effectiveness of that plan to keep Plaintiff safe.

38. On or about Friday, May 21, 2021, Ms. Gross called Plaintiff and discussed what the supervisor and reporting arrangement for Plaintiff should be moving forward.

39. Ms. Gross informed Plaintiff that she had spoken with Defendant Lichtenstein and said "Michael apologized, I mean, he didn't apologize, but he said he would treat you with respect." Ms. Gross added that Defendant Lichtenstein "really wanted" Plaintiff to call him about work prior to coming back to the Hotel, "so he knows he can still rely on her."

40. Clearly Defendants did not take responsibility for the severity of Plaintiff's complaint or Defendant Lichtenstein's actions as they were already pressuring Plaintiff to speak directly with Defendant Lichtenstein.

41. When Plaintiff called Defendant Lichtenstein, he asked if she wanted to talk about "your issue" or about work. Plaintiff responded that she would like to speak about work. He then discussed a project for Plaintiff and told her to go to the rooftop area.

42. During most weeks that Plaintiff worked for Defendants, Defendant Lichtenstein did not stay at the Hotel late on Friday afternoons. However, on that Friday, May 21, 2021, after receiving instructions from Defendant Lichtenstein to go to the rooftop, Plaintiff immediately saw that Defendant Lichtenstein was there.

43. Despite Plaintiff's arrangement with Defendants to preserve her comfort and safety, Defendant Lichtenstein called Plaintiff over to him. He was sitting in the Hotel's rooftop lounge area with the Hotel's general manager. Defendant Lichtenstein then gave Plaintiff instructions for

a project he wanted her to perform in complete violation of the new reporting arrangement Plaintiff had agreed to with Ms. Gross.

44. On Sunday, May 23, 2021, Ms. Gross sent a text message to Plaintiff inquiring how her workday went on May 21, 2021. Plaintiff reported that she was still reporting to Defendant Lichtenstein, contrary to their agreement.

45. Defendant Lichtenstein was out of town the following Monday and Tuesday, but on Wednesday, he returned to the Hotel and again called Plaintiff into a meeting with him and several other people in the Hotel restaurant. When Plaintiff approached his table, he tapped the open seat next to him indicating that she should sit there.

46. Defendant Lichtenstein's behavior made clear he had no intention of taking responsibility for his inappropriate behavior.

47. On May 31, 2021, Plaintiff's counsel contacted Ms. Gross regarding Plaintiff's claims of sexual harassment.

48. Defendants immediately retaliated against Plaintiff by falsely stating that Defendant Lichtenstein and Plaintiff had embraced as part of her birthday celebration and claiming that Plaintiff was a seasonal intern and stating she would be terminated as of June 4, 2021. Defendants further threatened Plaintiff with legal action in retaliation for her reporting the sexual harassment.

49. Defendant Lichtenstein has since hired another young woman for "product development." Upon information and belief, this new hire is from Argentina, does not have a green card, and is completely reliant on Defendant Lichtenstein and the job he gave her to remain in this country.

**FIRST CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964,**

**42 U.S.C. §§ 2000e,** *et seq.* **– Discrimination**
**Against the Corporate Defendants.)**

50. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

51. Plaintiff filed a charge with the allegations in this complaint with the EEOC and received a right to sue notice on September 14, 2021.

52. In violation of Title VII, Defendant ARC intentionally discriminated against Plaintiff on the basis of her gender and subjected her to a gender-based hostile work environment.

53. Defendant ARC's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

54. As a result of Defendant ARC's unlawful conduct, Plaintiff is entitled to recover compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(Title VII of the Civil Rights Act of 1964,**
**42 U.S.C. §§ 2000e,** *et seq.* **– Retaliation**
**Against the Corporate Defendants.)**

55. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

56. In violation of Title VII, Defendant ARC retaliated against Plaintiff for opposing and complaining about gender discrimination and sexual harassment.

57. Defendant ARC's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

58. As a result of Defendant ARC's unlawful conduct, Plaintiff is entitled to recover compensatory damages, including but not limited to damages for economic loss and emotional distress; punitive damages; attorneys' fees and costs; and such other and further legal and equitable relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**(New York State Human Rights Law ("NYSHRL"),**
**N.Y. Exec. L. §§ 290 et seq. – Gender Discrimination)**

59. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

60. In violation of the NYSHRL, Defendant Lichtenstein intentionally discriminated against Plaintiff on the basis of her gender.

61. Defendant's discrimination was sufficiently severe so as to affect the terms of Plaintiff's employment.

62. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

63. As a direct and proximate consequence of Defendant's discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

64. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**

**(New York State Human Rights Law ("NYSHRL"),
N.Y. Exec. L. §§ 290 et seq. – Retaliation)**

65. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

66. In violation of the NYSHRL, Defendants retaliated against Plaintiff for her complaints of gender discrimination.

67. Defendants' retaliation was sufficiently severe so as to affect the terms of Plaintiff's employment.

68. Defendants' conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected civil rights.

69. As a direct and proximate consequence of Defendants' retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation and anguish.

70. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to: damages for lost wages, emotional distress, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**(New York City Human Rights Law ("NYCHRL") – Gender Discrimination)**

71. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72. In violation of the NYCHRL, Defendant Lichtenstein discriminated against Plaintiff on the basis of her gender.

73. As a direct and proximate consequence of Defendant's discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

74. As a direct and proximate consequence of Defendant's discrimination against Plaintiff, Plaintiff suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputations, lasting embarrassment, humiliation and anguish.

75. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, and damages for emotional distress, as well as front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **SIXTH CLAIM FOR RELIEF**
**(New York City Human Rights Law ("NYCHRL") – Retaliation)**

76. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77. In violation of NYCHRL, Defendants retaliated against Plaintiff for complaining about gender discrimination.

78. As a direct and proximate consequence of Defendants' retaliation against Plaintiff, Plaintiff suffered, and continues to suffer, substantial monetary damages, including, but not limited to, a loss of income and employment benefits.

79. As a result of Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to backpay, lost employment benefits, as well as front pay, liquidated damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CLAIM FOR RELIEF
### (Common Law Battery)
### (Brought by Plaintiff against Defendant Lichtenstein)

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

81. Defendant Lichtenstein intentionally touched Plaintiff without her consent.

82. Defendant Lichtenstein's intentional touching of Plaintiff constituted offensive bodily contact.

83. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

(A) For compensatory, liquidated and punitive damages in an amount to be determined by the trier of fact;

(B) For reasonable attorneys' fees, interest, and costs of suit;

(C) For such other and further relief as the Court may deem just and equitable.

| | |
|---|---|
| Dated: New York, New York<br>October 15, 2021 | Respectfully submitted,<br>JOSEPH & KIRSCHENBAUM LLP<br><br>By: */s/ Leah Seliger*<br>  D. Maimon Kirschenbaum<br>  Leah Seliger<br>  32 Broadway, Suite 601<br>  New York, NY 10004<br>  Tel: (212) 688-5640<br>  Fax: (212) 688-2548 |

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which they have a right to jury trial.